THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ALBERT HAYES, JR., Defendant-Appellant.

First District (4th Division) No. 61185

Opinion filed December 17, 1975.

Paul Bradley and Gordon Berry, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Assistant State's Attorney, of counsel), for the People.

Mr. PRESIDING JUSTICE DIERINGER delivered the opinion of the court:

The defendant, Albert Hayes, Jr., was found guilty of attempted murder and two counts of aggravated battery following a jury trial in the Circuit Court of Cook County. He was sentenced to a term of not less than five nor more than 15 years in the Illinois State Penitentiary for the attempted murder conviction, however, the court imposed no sentence for the aggravated battery convictions.

The issues for review are whether the defendant was proved guilty beyond a reasonable doubt, whether the prosecutor's remarks during closing arguments denied the defendant a fair trial, and whether the aggravated battery convictions must be reversed because they are based on the same conduct as the attempted murder conviction.

The testimony of the prosecution witnesses, Eston Browder, Mr. and Mrs. Jones, and Juanita Hughes, established that on January 6, 1971, at about 7 p.m., the defendant entered the one-room apartment of Eston Browder, who lived in a rooming house at 4820 South Evans in the City of Chicago. Browder, aged 67, was in his room with Mrs. Morris, who was of a similar age. She lived at 4810 South Evans with her daughter, Mary Joyce Truman, and the defendant, who was engaged to Mary Joyce. Browder and Mrs. Morris were good friends, and she visited him often. Mrs. Morris died prior to trial.

When the defendant entered the room, he offered some beer to Browder, which was refused. Hayes began talking to Mrs. Morris, trying to get her to leave. He sat on the bed, and when Browder told him not to do so, he replied, "Why not, everybody else sits on it." At this point Juanita Hughes, another resident of the building, came in the room and Browder told her to get Ester Jones, who also lived in the building.

Jones came into the apartment with his wife and asked the defendant to leave. The defendant refused and lit a cigarette. He then spit on the match and threw it in Browder's face. Jones asked the defendant why he was picking on a man "old enough to be your daddy," and the defendant replied, "what the hell you got to do with it." Jones told his wife they were leaving and got up from his chair. As he started out, his wife hollered, "Look out Ester, he got a gun." The defendant, who was standing in the doorway, shot Ester Jones once in the neck. Mrs. Jones testified Hayes clicked the gun in her face two times before running out the door.

The defendant testified he had gone to Browder's apartment to ask Mrs. Morris if she knew where he could find her daughter. He tried to convince her to leave, but she wanted to remain and drink with her friends. Hayes told her he had not eaten and there was no food in the house. She said if he would go to the store and buy some liquor, she would fix him something to eat. She gave him some money, and he went to the store and bought a pint of whiskey for her and her friends and a quart of beer for himself.

Upon returning to the apartment, he ate a sandwich Mrs. Morris had fixed and asked her if she wanted to go home because she was getting high. When she again refused to leave, he told her he was going to get her daughter, and she would make her leave. After he turned to go out the door, he heard a lot of shuffling noise behind him. Upon turning around he saw Ester Jones running at him with a knife. He pulled his gun from his coat pocket and shot Jones, who continued to come at him. He then opened the door and walked out. He said he did not go to the police because, "I felt I was attacked, and I defended myself. Why should I go anywhere." Hayes was arrested 14 months later in California.

The prosecution witnesses all testified Jones had no knife.

The defendant first contends he was not proved guilty beyond a reasonable doubt based on the case of *People v. Coulson* (1958), 13 Ill.2d 290, 295-96, wherein the court stated:

> "This resumé of the testimony shows that the evidence relating to the material facts in issue was conflicting and cannot be reconciled. * * * A judgment of conviction can be sustained only on credible evidence which removes all reasonable doubt of the guilt of the defendant, and it is the insufficiency of the People's evidence which creates such doubt. If a conviction is to be sustained, it must rest on the strength of the People's case and not on the weakness of the defendant's case."

The defendant argues conflicts in the statements of the People's witnesses made their testimony unbelievable. He asserts they were all close friends and suggests they fabricated their testimony.

■■ After reviewing the record we conclude the testimony of the prosecution witnesses was not in conflict with respect to the material facts of the case. The determination of the credibility of witnesses is the function of the trier of fact (*People v. Stewart* (1970), 46 Ill.2d 125), and questions as to a witness' bias or any inconsistent or conflicting testimony are matters within the scope of the jury's determination. (*People v. Pigg* (1974), 17 Ill.App.3d 568.) We find the verdict was sufficiently supported by the evidence.

The defendant next contends he was denied a fair trial because of various prejudicial statements in the prosecution's closing argument. He argues error was committed when the prosecutor said the jurors should be aware that the defense attorney would try to confuse them with "smoke screens" when he addressed them in his closing statements. The defendant complains of references to his being a "trouble maker" and "he always has been and he always will be." The defendant contends it was prejudicial error for the prosecution to comment that he "split to California," a reference which suggests flight. He argues the mere fact he was arrested in California amounted to proof of leaving rather than flight which denotes a leaving "under a consciousness of guilt and for the purpose of evading arrest."

No objections were made to any of these statements at trial and must therefore be deemed to be waived. *People v. Dailey* (1972), 51 Ill.2d 239; *People v. Miller* (1974), 21 Ill.App.3d 762.

■■■ Furthermore, in *People v. Palmer* (1970), 47 Ill.2d 289, the court held a reference to a "smoke screen" did not constitute reversible error. With respect to the comments the defendant was a "trouble maker," it is

well established a prosecutor may "reflect unfavorably on the accused and to denounce his wickedness and even indulge in invective." (*People v. Halteman* (1956), 10 Ill.2d 74; *People v. Pierce* (1975), 26 Ill.App.3d 550.) As to the issue of the defendant's "splitting" to California, the trial court initially precluded the introduction of evidence concerning where the defendant was arrested. Then, during redirect examination of the defendant, his counsel asked whether he had been hiding. The defendant answered he didn't hide. At this point the court reversed its previous ruling and held the defense had opened the door to testimony concerning where he was arrested. It is clear the prosecution may go into matters raised by the defense (*People v. Wilbert* (1973), 15 Ill.App.3d 974), and the court did not commit error by allowing the introduction of such evidence.

██ Finally, the defendant contends the two aggravated battery convictions must be reversed based on the case of *People v. Lilly* (1974), 56 Ill.2d 493, wherein the court held where two criminal convictions are based on exactly the same conduct, the defendant cannot properly be convicted of both notwithstanding that only a single sentence was imposed. The State concurs in this analysis.

For these. reasons, the judgment of the Circuit Court of Cook County is affirmed with respect to the conviction for attempted murder, and reversed with respect to the two convictions for aggravated battery.

Affirmed in part and reversed in part.

BURMAN and JOHNSON, JJ., concur.